ALDRIDGE, Tax Collector, *et al. v.* FEDERAL LAND BANK OF COLUMBIA.

286

No. 16061.   FEBRUARY 10, 1948.

288

*Eugene Cook, Attorney-General, A. J. Hartley, Assistant Attorney-General, John A. Smith Jr., Andrew J. Tuten, J. E. Hyman,* and *Rubye G. Jackson,* for plaintiffs in error.

*Charles P. Noles* and *Harry D. Reed,* contra.

DUCKWORTH, Presiding Justice. (After stating the foregoing facts.) ■ The statute, Code, § 92-5712, under authority of which the petitioner seeks to have the security of its loan released from the lien for ad valorem taxes provides that "The owner or the holder of any equity, lien, or interest in or on *property* returned or assessed with other *property* for taxes shall be allowed to pay the taxes assessed against any one or more pieces of such *property*" under the conditions stated. (Italics ours.) One of the issues here is whether or not the word "property," which we have italicized, should be construed to refer only to real property or to both real and personal property. The Code

itself furnishes a guide to the construction of such an act, it being provided in § 102-103 that "The following meanings shall be given to the following words in all statutes, unless a different meaning is apparent from the context: . . Property includes real and personal property." See also *Fears* v. *State,* 102 *Ga.* 274, 279 (29 S. E. 463). We are bound, therefore, to construe the statute here involved as referring to both real and personal property wherever the word "property" appears, unless a different meaning is apparent from the context. Examining closely the entire language of the statute, we find nothing to authorize any limitation of the meaning of property as there used to only real property. There is nothing confusing, uncertain, or ambiguous in the language. If the intent of the legislature was, as counsel for the plaintiffs in error argue, to provide for a release from the lien of taxes only where, after a given release, there was other real estate from which the tax due on personal property could be realized in the event such property could not be found and levied upon, such an intent can not reasonably be gathered from the statute. Whatever disadvantage may result to the taxing authorities, it is plain that the legislature was providing some relief to one occupying the status of the lending corporation, and in doing so it used the word "property" without in any wise by other language or context limiting its meaning. The argument that "other pieces of property" must necessarily refer to real estate alone can not be upheld without writing into the statute something that was not put there by the legislature and which is not "apparent from the context." In these circumstances the rule of construction, many times announced by this court, is that, "If the legislature does plainly and distinctly declare its intention, the act is not open to construction; it needs, and can receive none. It stands self-interpreted, and courts have nothing to do but to enforce it. The exclusion of interpretation, where none is needed, may be stated to be, notwithstanding the absurdity which it involves, the *first rule of construction.*" *Neal* v. *Moultrie,* 12 *Ga.* 104, 110; *Atkins* v. *State,* 154 *Ga.* 540, 542 (114 S. E. 878); *Georgia Casualty Co.* v. *Jones,* 156 *Ga.* 664, 666 (119 S. E. 721); *Standard Oil Co.* v. *State Revenue Comm.,* 179 *Ga.* 371, 375 (176 S. E. 1). As stated in *Floyd County* v. *Salmon,* 151 *Ga.* 313, 315 (106 S. E. 280), "Where the act is plain, unambiguous, and posi-

tive, and is not capable of two constructions, the court is not authorized to construe the act according to the supposed intention of the legislature." It not being apparent from the context that the word "property" as used in the statute was intended to mean other than both real and personal property, it is, therefore, construed as the Code, § 102-103, directs, and is held to mean both real and personal property.

█ But counsel for the plaintiffs in error insist that, if the statute is to be construed as we have done, it is violative of article 4, section 1, paragraph 1 of the Constitution of 1877 (Code, § 2-2401), and article 7, section 1, paragraph 1 of the Constitution of 1945 (Code, Ann. Supp., § 2-5401). In support of this view it is urged that where, as here, a tax execution covers only one piece, parcel, or tract of real estate, and it is shown that a release thereof by a tax collector would seriously impair or extinguish the lien for taxes, the sovereign right of the State to tax as declared by the Constitution is thereby restrained. We are unable to see wherein the statute has the effect claimed. It in no wise restrains or restricts the right to tax, and in the present case assessments have been made on both the real and the personal property here involved, and execution has been issued with the respective amounts of the taxes shown therein. The tax on the land on which the petitioner has a lien is paid as fully, when the proceedings authorized by the statute have been completed, as if collected directly from the defendant in execution. It may, of course, result in the taxing authorities being without any realty upon which to levy if the personal property be secreted, and thus the lien of the State and county to that extent become ineffective, but the Constitution does not purport, in article 7, section 1, paragraph 1 (Code, Ann. Supp., § 2-5401), or elsewhere, to protect the lien of a tax. If the lien here be rendered impotent as to the real estate, it will merely have suffered the fate of many liens for taxes, as witness the numerous instances where taxes have been uncollectible after seven years from the date of issuance of an execution or from the time of the last entry upon the execution by the proper officer. See Code, § 92-7701; *Georgia Railroad & Bkg. Co.* v. *Wright*, 124 *Ga.* 596 (20) (53 S. E. 251); *Sharpe* v. *Waycross*, 185 *Ga.* 208, 214 (194 S. E. 522); *Suttles* v. *Dickey*, 192 *Ga.* 382 (1), (15 S. E. 2d, 445). The statute is not unconstitutional for any reason assigned.

■   The plaintiffs in error contend that a case for a declaratory judgment is not here presented, because the petitioner has an adequate remedy by mandamus, injunction, or affidavit of illegality. It has been held by this court, however, that though there exists a remedy, either in law or equity, a petition for declaratory judgment will lie "when there be some fact or circumstances which necessitate a determination of disputes, not merely for the purpose of enforcing accrued rights, but in order to guide and protect the petitioner from uncertainty and insecurity with respect to the propriety of some future act or conduct which is properly incident to his alleged rights, and which future action without such direction might reasonably jeopardize his interest." *Mayor &c. of Athens* v. *Gerdine*, 202 *Ga.* 197 (42 S. E. 2d, 567) ; *Georgia Marble Co.* v. *Tucker*, 202 *Ga.* 390 (43 S. E. 2d, 245). The allegations of fact, which were stipulated as true, call for the application of the rule of law quoted above. The existence of the tax execution and the dispute as to the validity and meaning of a law relating to the controversy between the parties make a declaratory judgment desirable, not merely to enforce accrued rights, but to guide and protect the petitioner from uncertainty and insecurity as to future acts or conduct incident to its alleged rights. It follows that the trial court did not err in overruling the demurrers and in entering judgment declaring that the petitioner was entitled to a release of its security from liens for State and county ad valorem taxes for the year 1945 upon complying with its offer.

*Judgment affirmed. All the Justices concur, except Bell, J., absent on account of illness, and Wyatt, J., who took no part in the consideration or decision of this case.*